UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| ALL IN PROPERTIES, LLC § | |
| § | |
| v.  § | CIVIL NO. 4:20-CV-875-SDJ |
| § | |
| DFP PROPERTIES 2, LLC § | |

## MEMORANDUM OPINION AND ORDER

This lawsuit arises from a property dispute in Denton, Texas. Plaintiff All In Properties, LLC ("AIP") accuses Defendant DFP Properties 2, LLC ("DFP") of wrongfully diverting stormwater and runoff onto its property through concrete drainage flumes. But AIP has no cause of action under Texas law because the flumes were installed before AIP bought the property. Accordingly, AIP's claims must be dismissed.

### I. BACKGROUND

The parties own adjacent properties in Denton, sharing a north-south border. Originally, the properties were unified as a single plot of land. But in late 2013, then-landowner Walnut Acres, LLC, subdivided the land into two plots: a northern plot and a southern plot. (Dkt. #40-5). Before selling either property, Walnut Acres installed two concrete drainage flumes that straddle the plots' shared border, beginning on the elevated southern plot and running about twenty feet onto the lower northern plot. (Dkt. #40 at 7–8).[1] These drainage flumes collect rainwater and runoff

---

[1] Although the record does not confirm whether the flumes were installed before or after the property was subdivided, it does show that the flumes were installed no later than October 2014. (Dkt. #40-2 at 10).

1

into narrow channels lined with riprap and other erosion-control material, carrying the water north. (Dkt. #40-3 ¶¶ 9–10). Below are photos of the two drainage flumes.

 

Photo #1: 7-7-21 - View of Concrete Flume from DFP Property

Photo #2: 7-7-21 – View of Secondary Flume From DFP Property

(Dkt. #50-1 at 8). Over a year after constructing the flumes, Walnut Acres sold the northern plot to AIP. (Dkt. #15 ¶ 5). Eight months after that, it sold the other plot to DFP. (Dkt. #15 ¶ 6). Below is an annotated image of the current plots and the flumes.



2

Several years passed without issue. About four years after its purchase, however, AIP complained to DFP about erosion on its property from the flumes' diverted water. (Dkt. #40 at 10). In response, DFP hired two engineers to prepare and submit repair proposals. (Dkt. #40 at 10). But these proposals culminated in unsuccessful negotiations. (Dkt. #40-3 ¶ 20). AIP then sued DFP for trespass, nuisance, and violations of the Texas Water Code. (Dkt. #2).

In short, AIP alleges that the drainage flumes have caused, and will continue to cause, erosion to its property. (Dkt. #15 ¶¶ 7–8). Because the damages flowing from the drainage flumes are "continuous in nature" and will "continue to occur in perpetuity," AIP seeks to enjoin DFP from diverting any rainfall through the flumes or any other manmade structures. (Dkt. #15 ¶¶ 8, 18). DFP counters that AIP's claims fail for two main reasons. First, DFP has never taken any affirmative action to divert water onto AIP's property. (Dkt. #40-3 ¶¶ 24–25). Second, AIP's property is subject to an implied easement that allows for such water diversion. (Dkt. #40 at 14–16). In support, DFP notes that AIP would have been aware of the drainage flumes before purchasing the property because they were already constructed. (Dkt. #40-3 ¶ 15).

DFP therefore moved for summary judgment on each of AIP's claims. (Dkt. #40). After reviewing the briefing, the Court sua sponte ordered the parties to submit supplemental briefing on a separate issue: AIP's standing.[2] (Dkt. #90). Both parties filed their supplements addressing standing. (Dkt. #91, #92).

---

[2] In general, a district court may sua sponte "note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties." *Century Sur. Co. v. Blevins*, 799 F.3d 366, 372 (5th Cir. 2015) (citing 5B WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)). "In the Fifth Circuit,

3

## II. LEGAL STANDARD

The Court's jurisdiction extends to only active cases and controversies, not hypothetical disputes. U.S. CONST. art. III, § 2; *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021). When the plaintiff lacks a personal stake in the asserted claims—i.e., standing—the Court must dismiss the suit. FED. R. CIV. P. 12(h)(3); *TransUnion LLC*, 594 U.S. at 423 (citation omitted). To establish constitutional standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC*, 594 U.S. at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

"In diversity cases, plaintiffs cannot maintain a cause of action unless they have standing under state law." *MidTexas Indus. Props., Inc. v. U.S. Polyco, Inc.*, No. 23-11095, 2024 WL 5252499, at *2 (5th Cir. Dec. 31, 2024) (citing *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780–83 (5th Cir. 2015)). That said, lack of standing under state law raises prudential-standing concerns, not jurisdictional concerns. Prudential standing is "a merits question: who, according to the governing substantive law, is entitled to enforce the right?" *Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022) (citation omitted). In effect, it imposes a "general prohibition on a litigant's raising another person's legal rights[.]" *Lexmark Int'l v. Static Control*

---

"fairness requires that a litigant have the opportunity to be heard before a claim is dismissed[.]" *Id.* Because the Court raised the issue of standing under Texas law sua sponte, it allowed both parties to file supplemental briefing on the issue and considered those filings.

*Components, Inc.*, 572 U.S. 118, 126, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014) (citations omitted). Therefore, when the purported plaintiff is not the person with the legal right to sue, the court must dismiss the case.

### III. DISCUSSION

The Court first addresses whether AIP has standing under Article III.[3] Next, the Court evaluates AIP's claims under Texas law. Finally, the Court decides whether dismissal or remand is the appropriate remedy.

### A. AIP's Standing Under Article III

The Court finds that AIP has shown that it meets the requirements for Article III standing: it suffered injury in fact (erosion damage to its property) that is fairly traceable to the water diversions from DFP's property and that could be redressed by an injunction from this Court. True, AIP did not own the property and thus have a property interest when the drainage flumes were constructed. But this deficiency creates concerns with standing under only Texas law, not under Article III.

The Fifth Circuit has clarified that questions about the "existence of a protected property interest" do not necessarily implicate the court's subject-matter jurisdiction. *Glen v. Am. Airlines, Inc.*, 7 F.4th 331, 335 (5th Cir. 2021) (citation omitted). Indeed, "when the existence of a protected property interest is an element of the claim, deciding whether the interest exists virtually always goes to the merits rather than standing." *Id.* All of AIP's claims under Texas law require a protected

---

[3] "Because Article III standing is a threshold issue, [courts] must address it before considering questions of prudential standing." *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013) (citation omitted).

property interest.[4] As a result, whether AIP has a protected property interest goes to the merits, not constitutional standing.

The Fifth Circuit's analysis in *Glen v. American Airlines, Inc.* supports this conclusion. There, the plaintiff sued under the Helms-Burton Act, which allowed "United States national[s] with a claim to" certain property "to sue any person who traffics in such property," if they had acquired ownership before a certain statutory date. *Id.* at 333. The plaintiff there had not acquired ownership of the relevant claim before that date. *Id.* Still, the court held that he had Article III standing. *Id.* at 336.

To be sure, the plaintiff's belated ownership was fatal to his claims on the merits. *Id.* But for Article III purposes, this fact was irrelevant. What mattered was that "the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts[.]" *Id.* at 334 (quotations omitted) (citing *TransUnion LLC*, 594 U.S. at 417). Because the alleged harm was caused by the defendant's trafficking of his property, which bore "a close relationship to unjust enrichment," the court found that he had suffered a concrete injury. *Id.*

The same is true here. AIP has proven a concrete injury in fact because its property has been damaged by erosion and flooding. And like the injury alleged in *Glen*, AIP's alleged harms—trespass and nuisance—bear a "close relationship to

---

[4] *See Lyle v. Midway Solar, LLC*, 618 S.W.3d 857, 875 (Tex. App.—El Paso 2020, pet. denied) (trespass); *Tex. Auto Salvage, Inc. v. D D Ramirez, Inc.*, No. 13-19-500-CV, 2021 WL 4780218, at *11 (Tex. App.—Corpus Christi–Edinburg Oct. 14, 2021, no pet.) (mem. op.) (nuisance); *Golden Corral Corp. v. Noble Aus. Apartments L.L.C.*, No. 03-19-463-CV, 2021 WL 2878565, at *2 (Tex. App.—Austin July 9, 2021, no pet.) (mem. op.) (Section 11.086 of the Texas Water Code).

[harms] traditionally recognized as providing a basis for a lawsuit in American courts[.]" *Id.* (citation omitted).[5] These injuries are also fairly traceable to the alleged water diversions from the drainage flumes that begin on DFP's property. And such harms could likely be redressed by an injunction from this Court. Therefore, as with the plaintiff in *Glen*, "[AIP] has standing to sue." *Id.* at 336.

## B. AIP's Claims under Texas Law

Although AIP has Article III standing to sue, "[its] claim[s] fail[] on the merits" under Texas law. *Id.*[6]

### 1. Standing under Texas law

The Texas Supreme Court has recognized for "more than 100 years . . . that a cause of action for injury to real property accrues when the injury is committed." *Exxon Corp. v. Emerald Oil & Gas Co.*, 331 S.W.3d 419, 424 (Tex. 2010) (citing *Hou. Water–Works Co. v. Kennedy,* 8 S.W. 36, 37 (Tex. 1888)). Texas law thus generally precludes the recovery of damages for existing property damage by subsequent purchasers. *Id.* ("The right to sue is a personal right that belongs to the person who owns the property at the time of the injury[.]").

---

[5] Under Texas law, "[t]respass to real property is an unauthorized entry upon the land of another, and may occur when one enters—or causes something to enter—another's property." *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011). The Texas Supreme Court has defined a "nuisance" as "a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003).

[6] Because the Court finds that AIP has no cause of action under Texas law, it need not reach DFP's arguments for dismissal and related arguments concerning requested repair costs, attorney's fees, or exemplary damages. *See* (Dkt. #40).

7

Of course, this principle does not bestow upon landowners an irrevocable license to pollute. For example, nothing precludes a property owner from bringing claims for new property injuries. *La Tierra de Simmons Familia, Ltd. v. Main Event Ent., LP*, No. 03-10-503-CV, 2012 WL 753184, at *5 (Tex. App.—Austin Mar. 9, 2012, pet. denied) (mem. op.). What's more, the discovery rule could "defer[] accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Id.* at *7 (citing *HECI Expl. Co. v. Neel,* 982 S.W.2d 881, 886 (Tex. 1998)).[7] Finally, a prospective buyer may protect themselves from harm by "obtaining warranties and assignments of claims . . . as part of the purchase agreement." *Id.* at *8. In short, a subsequent property owner has a viable cause of action for property damage under three main theories: (1) the property damage occurred after acquisition (new injury); (2) the plaintiff, while exercising reasonable diligence, could not have discovered the relevant facts until after acquisition (discovery rule); or (3) the plaintiff was assigned the right to sue for known harm at the time of acquisition (assignment).

For nuisance claims, when a legal injury begins to accrue depends on whether the alleged nuisance is permanent or temporary. *Schneider Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004). "A permanent nuisance claim accrues when injury *first* occurs or is discovered; a temporary nuisance claim accrues *anew* upon

---

[7] To be clear, several Texas courts of appeals have found that the discovery rule does not apply to cases in which the plaintiff lacks standing because "the discovery rule relates to limitations and 'the question of limitations cannot arise unless the plaintiff has standing to come into court.'" *Id.* (citations omitted) (collecting cases).

each injury." *Id.* Because lower courts had struggled to consistently categorize nuisance claims as permanent or temporary, the Texas Supreme Court weighed in with the following definitions:

> An injury to real property is considered permanent if (a) it cannot be repaired, fixed, or restored, *or* (b) even though the injury can be repaired, fixed, or restored, it is substantially certain that the injury will repeatedly, continually, and regularly recur, such that future injury can be reasonably evaluated. Conversely, an injury to real property is considered temporary if (a) it can be repaired, fixed, or restored, *and* (b) any anticipated recurrence would be only occasional, irregular, intermittent, and not reasonably predictable, such that future injury could not be estimated with reasonable certainty.

*Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 480 (Tex. 2014). These definitions apply equally to trespass claims. *Id.*

AIP's standing under Texas law thus falls under the following framework. If AIP's claims are for a permanent injury, it has no standing because such claims would accrue when the drainage flumes were constructed, which pre-dated AIP's purchase. But if AIP's claims are for a temporary injury, they could have started to accrue after AIP's purchase, conveying standing. In short, AIP's standing under Texas law turns on whether its claims are for a temporary or permanent injury.[8]

---

[8] While some Texas cases suggest that the distinction between "permanent" and "temporary" nuisances is not relevant to standing, *e.g.*, *Denman v. Citgo Pipeline Co.*, 123 S.W.3d 728, 735 (Tex. App.—Texarkana 2003, no pet.), most find that it is, *e.g.*, *Denman v. SND Operating, L.L.C.*, No. 06-04-61-CV, 2005 WL 2316177, at *4 (Tex. App.—Texarkana Sept. 23, 2005, no pet.) (finding that the distinction can be relevant); *see also La Tierra*, 2012 WL 753184, at *9 n.9 (collecting cases). The Court will follow the guidance of the majority of Texas courts and assume that this distinction is relevant to standing under Texas law.

**2. Permanent or temporary injury**

A review of Texas precedent demonstrates that the injury alleged by AIP is permanent, not temporary. Most instructive is *La Tierra*, in which a Texas court of appeals considered nearly identical facts and claims. The plaintiff there—La Tierra— owned a downhill tract of land that received drainage water from its uphill neighbor through a drainage system that was installed before La Tierra purchased the land. *La Tierra*, 2012 WL 753184, at *1. When La Tierra acquired this tract, "the drainage system and the manner in which it operates [were] clearly visible . . . ." *Id.* La Tierra still acquired the land as is. *Id.* at *2. Several years later, it sued the owner of the uphill tract for nuisance, trespass, and Texas Water Code violations related to water diversion through the drainage system. *Id.* at *1.

In affirming the trial court's holding that La Tierra lacked standing under Texas law, the court of appeals found that La Tierra's injury was "as a matter of law, not 'temporary' in nature but is instead permanent[.]"[9] *Id.* at *9. The court emphasized the following five points in support of its conclusion. First, the drainage system "ha[d] been regularly maintained and inspected during rainfall events and ha[d] operated in a consistent manner since it was constructed." *Id.* at *10. Second, "there ha[d] been no improvements or significant alterations to the system that ha[d] altered or changed the flows of storm-water discharges" since construction. *Id.* Third, no evidence suggested that the drainage system had "otherwise changed, shifted, or

---

[9] Although *La Tierra* pre-dated the *Gilbert Wheeler* decision, the court's analysis relied on definitions of permanent and temporary injury that are consistent with those announced by the Texas Supreme Court in *Gilbert Wheeler*.

been altered over time so as to give rise to a new and distinct injury." *Id.* Fourth, there was no "evidence of a latent defect that did not manifest itself until" after La Tierra acquired the tract. *Id.* Fifth, because significant rainfall events were not "rare or infrequent in the area," the alleged injuries could not "be characterized as temporary rather than permanent." *Id.*

Taken together, the court concluded that "any injury arising from the operation of the drainage system was a permanent injury that existed before La Tierra acquired the property[.]" *Id.* And without "an assignment of the prior owners' causes of action at the time the underlying lawsuit was filed, La Tierra lacked standing" under Texas law. *Id.* This conclusion aligns with the Texas Supreme Court's conclusions on similar facts, as well as the decisions of Texas intermediate appellate courts.[10]

*La Tierra* confirms the Court's conclusion that AIP lacks standing under Texas law. AIP's alleged property damage results from water being channeled through a drainage system that existed before it acquired the property. That system was open and obvious to AIP during acquisition. Nothing before the Court suggests that the system has been improved or altered in any way. Instead, the system appears to operate the same now as it did when first installed.[11] AIP also points to no latent

---

[10] *See, e.g.*, *Vann v. Bowie Sewerage Co.*, 90 S.W.2d 561, 562–63 (Tex. 1936) (holding that plaintiff lacked standing to sue neighboring sewage company for septic-tank discharge polluting his creek because the tank had been polluting the creek since before plaintiff had acquired the land); *Senn v. Texaco, Inc.*, 55 S.W.3d 222, 226 (Tex. App.—Eastland 2001, pet. denied) (holding that the plaintiffs lacked standing to sue defendant oil and gas companies for contaminating an aquifer on their land because any injuries that occurred to that aquifer "occurred prior to their purchase" of the land).

[11] In passing, AIP points to its expert's conclusion that certain structures on DFP's property amplify water diversion into the flumes. (Dkt. #91 at 2). But AIP's expert did not

11

defect causing injury that manifested after its purchase. Nor does AIP allege that rainfall is so infrequent in Denton, Texas, as to render its injury temporary.[12] Indeed, AIP categorizes its rainfall-related damages as "continuous in nature" and states that its injuries will "continue to occur in perpetuity." (Dkt. #15 ¶¶ 8, 18). AIP's claims are thus for a permanent injury. And because those claims began to accrue before AIP acquired a property interest, it has no cause of action under Texas law. *La Tierra*, 2012 WL 753184, at *10.

AIP mounts three primary counterarguments in support of its alleged standing. None is persuasive. *First*, AIP attempts to distinguish *La Tierra* because that case concerned only one drainage flume and because the defendant there had provided "evidence showing they maintained the drainage system on a monthly basis." (Dkt. #91 at 3–4). These distinctions do not alter the applicability of *La Tierra*.

To begin with, the decision in *La Tierra* did not turn on—or even discuss—the number of drainage flumes. More to the point, whether DFP has maintained the drainage flumes is irrelevant here.[13] What's relevant is whether the record shows

---

conclude that DFP built those structures or that the structures did not exist when AIP bought the property. (Dkt. #50-1 at 6). Nor could he: Images submitted by DFP's expert from Google Earth show that these structures existed before AIP's purchase. (Dkt. #40-2 at 10). The Court therefore finds this conclusion irrelevant.

[12] AIP points to *Austin & Northwestern Railroad Co. v. Anderson* to suggest that some courts have treated each new rainfall as a separate event. (Dkt. #49 at 8). But the injuries in that case resulted from three discreet rainfall events, each separated by at least a year. *Anderson*, 15 S.W. 484, 484–86 (Tex. 1891). By contrast, the evidence here shows that water has been diverted consistently to AIP's property with each storm or rainfall. (Dkt. #40-3 ¶¶ 11–12). *Anderson* and its reasoning are therefore inapt.

[13] In fact, AIP's expert report does not even address erosion caused by DFP's alleged failure to maintain the flumes.

that the drainage system began to operate differently after AIP's acquisition, so as to create a "new injury" that began to accrue after AIP acquired its property interest. It doesn't. AIP suggests that "it can be presumed" from the lack of maintenance that "the combination of the two flumes over time caused excessive erosion[.]" (Dkt. #91 at 5). It cites neither case law nor expert opinion to support this proposition. The Court therefore rejects this suggestion and finds that *La Tierra* governs here.

*Second*, AIP claims that *Ranchero Esperanza, Ltd. v. Marathon Oil Co.*, 488 S.W.3d 354 (Tex. App.—El Paso 2015, no pet.), supports its alleged standing under Texas law. (Dkt. #91 at 2). Not so. That case concerned a negligently plugged oil well located near the plaintiff's property that failed and started leaking saltwater onto the property. *Id.* at 356. Although the plug was set years before the plaintiff acquired the property, the court found that the injury only began to accrue when the saltwater leak began—*after* the plaintiff's acquisition—so the plaintiff had standing under Texas law. *Id.* at 363. AIP's injuries, by contrast, have been caused by nothing more than Denton's typical rainfall. How else could its injuries be, as AIP puts it, "continuous in nature"? And how could they otherwise "continue to occur in perpetuity"? Because AIP's rainfall-related injuries began to accrue once the drainage flumes were installed—not when some discrete event occurred causing a new injury—*Ranchero Esperanza* is irrelevant.

*Third*, AIP argues that it was assigned the right to sue DFP from the prior owner. (Dkt. #91 at 5–7). But as the Texas Supreme Court has made clear, "[t]he right to sue is a personal right that belongs to the person who owns the property at the

13

time of the injury, and the right to sue does not pass to a subsequent purchaser of the property unless there is an express assignment of the cause of action." *Exxon Corp.*, 331 S.W.3d at 424; *see also Vann*, 90 S.W.2d at 561–62 (noting that a subsequent purchaser had no right of action for damages to property when "the deed to the land . . . did not affect a transfer of the vendor's claim for damages"). The record here provides no evidence of "an express assignment" of any cause of action from Walnut Acres to AIP, and the Court cannot infer that such an assignment occurred. *See, e.g.*, *Brinston v. Koppers Indus.*, 538 F.Supp.2d 969, 979 (W.D. Tex. 2008) ("A general warranty deed is insufficient to convey an interest in nuisance claims. . . . The only manner in which Plaintiffs could have acquired such an interest is by express assignment from their predecessor in interest.") (citation modified).

In sum, AIP's claims are rooted in permanent injuries that began to accrue when the drainage flumes were first installed—pre-dating AIP's property interest. Without a valid property interest at the time when the injury began to accrue, AIP has no valid cause of action and therefore lacks standing under Texas law. *Exxon Corp.*, 331 S.W.3d at 424. AIP's claims therefore fail on the merits and must be dismissed. *Glen*, 7 F.4th at 337.

**C. The Appropriate Remedy Under Federal Law**

Because this case was removed from state court, (Dkt. #1), the Court must decide whether it should dismiss or remand the case.

Article III standing implicates a court's jurisdiction. So if a plaintiff lacks Article III standing in a removed case, the court lacks subject-matter jurisdiction over the parties and must remand the case under the removal statute. *See*

28 U.S.C. § 1447(c); *see also Lutostanski v. Brown*, 88 F.4th 582, 587 (5th Cir. 2023). But AIP has Article III standing. *See supra* at Part III.B.2. Its claims fail for a different reason—lack of standing under Texas law. Because AIP is not entitled to enforce the rights it asserts under Texas law, it has no valid cause of action and its claims must be dismissed. *See Abraugh*, 26 F.4th at 301.

## IV. CONCLUSION

It is **ORDERED** that AIP's claims are **DISMISSED with prejudice**.

**So ORDERED and SIGNED this 28th day of July, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

15